**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**LOWANDA L. MITCHELL,**

        **Plaintiff,**

                             **Case No. 2:25-cv-310**

    **vs.**                          **Judge Douglas R. Cole**

                                     **Magistrate Judge Elizabeth P. Deavers**

**KEYBANK NATIONAL ASSOCIATION,**
*et al.*,

        **Defendants.**

## INITIAL SCREEN REPORT AND RECOMMENDATION AND ORDER

Plaintiff, Lowanda L. Mitchell, an Ohio resident proceeding here *pro se*, was granted leave to proceed *in forma pauperis* by previous Order of the Court.  (ECF No. 3.)

This matter is now before the Undersigned to undertake the initial screen required by law to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e)(2).  Having completed the initial screen, the Undersigned **RECOMMENDS** that Plaintiff be allowed to proceed on her claims against KeyBank National Association but that all other claims be **DISMISSED** in their entirety.

### I.

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent."  *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from

filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490

U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[1] as part of the

statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been
> paid, the court shall dismiss the case at any time if the court determines that--
>
> \*      \*      \*
>
> (B) the action or appeal--
>
>> (i) is frivolous or malicious;
>>
>> (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte*

dismissal of an action upon the Court's determination that the action is frivolous or malicious, or

upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the

basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also*

*Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure

12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule

8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual

demands on the authors of complaints." *16630 Southfield Ltd*., *P'Ship v. Flagstar Bank, F.S.B.*,

727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a]

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

---

[1]Formerly 28 U.S.C. § 1915(d).

of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## II.

Construed very broadly, Plaintiff's Complaint appears to be comprised of three separate documents, a 26-page "Original Complaint" naming KeyBank National Association as a Defendant (ECF No. 4),[2] a second "Original Complaint" filed April 16, 2025 also naming

---

[2] In the first "Original Complaint," Plaintiff suggests that she may be intending to name Key Bank National Home Loan Trust 2002-6 as a Defendant. (*See, e.g.,* ECF No. 4 at III. PARTIES.) Any such entity, to the extent Plaintiff considers it to be distinct from KeyBank National Association, however, is not named as a Defendant in the other documents construed here as part of her Complaint. Further, the first "Original Complaint" refers throughout to the

KeyBank National Association as a Defendant (ECF No. 5), and a document attached to the "Original Complaint and incorporated into the second "Original Complaint" which is itself titled as a "Complaint for Fraud, Unjust Enrichment, Fraud Upon the Court, and Monetary Damages." (ECF Nos. 4-1; ECF No. 5 at 9-15.) This third document names as Defendants KeyBank NA, Franklin County Recorder's Office, Attorneys Jessica M. Johnson and Tamara Gurchik, Judges Colleen O'Donnell and Andria Noble, "other Unknown Defendants," Autumn Frandsen, Cindy Windsor, Brandon Cox Hendrix, and the "Franklin County Treasurer." (*Id*.) From the Court's experience, the first two filings are styled as if prepared by counsel while the duplicate filings are more consistent with typical *pro se* filings.

Between all filings, Plaintiff's second "Original Complaint" contains the most information shedding light on the alleged factual background for Plaintiff's claims. In short, Plaintiff's claims arise from a state court foreclosure action, culminating in a Sheriff's Sale on March 10, 2023[3], and the loss of Plaintiff's home of more than twenty years. The factual background as alleged by Plaintiff, and taken as true for purposes of this screening, is set forth here verbatim:

> 5. On or about July 8, 2002, Plaintiff executed a mortgage and promissory note with KeyBank National Association for the subject property at 1224 E. 25th Ave,

---

singular "Defendant" and Plaintiff has not submitted service forms for any such entity. Additionally, the state court's docket sheet indicates that the Plaintiff in the underlying foreclosure action was KeyBank, N.A. *See KeyBank, N.A. v. Lowanda Mitchell, et al.,* Case No. 22 CVE-05-3404, filed in the Franklin County Court of Common Pleas on May 19, 2022. The state court's docket and filings are available at https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline. The Court takes judicial notice of the state court's docket sheet. *Palmer v. Commonwealth Credit Union, Inc.,* No. 3:24-CV-295-RGJ, 2024 WL 4906504, at *1 (W.D. Ky. Nov. 27, 2024) (collecting cases). For these reasons, for purposes of this Initial Screen Report and Recommendation and Order, the Undersigned does not construe Plaintiff's Complaint to include Key Bank National Home Loan Trust 2002-6 as a Defendant.

[3] *See KeyBank, N.A. v. Lowanda Mitchell, et al.,* Case No. 22 CVE-05-3404.

Columbus, Ohio 43211. This agreement constituted an unenforceable adhesion contract, drafted exclusively by the Defendant and presented to Plaintiff on a take-it-or- leave-it basis without negotiation or meaningful opportunity for review. The terms disproportionately favored the Defendant and placed all risk solely upon the Plaintiff, while falsely conveying fairness and legality on the face of the document. Plaintiff was misled regarding her rights and obligations, and key information was either omitted o misrepresented. The initial mortgage terms were purported to be| conventional and fair; however, material aspects of the agreement were concealed or misrepresented.

6. The mortgage was subsequently pooled and securitized into the Key Bank National Home Loan Trust 2002-6. Plaintiff was never informed of the securitization process or the implications of her loan being transferred into a trust. The endorsement, assignment, and negotiation of the note failed to comply with the requirements of the Uniform Commercial Code and applicable Ohio state laws. There was no proper chain of title or legal standing to enforce the mortgage note. A licensed private investigator, serving as a witness in fact, conducted an independent audit of the Plaintiffs mortgage] and note. This audit confirmed numerous violations, irregularities, and evidence of misrepresentation that support Plaintiffs claims. The findings include improper| endorsements, defective assignments, broken chain of title, and procedural deficiencies consistent with fraudulent foreclosure practices.

7. Defendant falsely represented to the Court that it had legal standing to foreclose on| Plaintiff's property. It lacked possession of the original note, proper endorsement, and a valid assignment of the mortgage. The reliance on robo-signed documents and| unverified assignments further misled the Court and prejudiced the Plaintiff. Publicly available court records reflect that KeyBank National Association has been a named defendant in numerous legal actions across multiple jurisdictions, many of which involved allegations of improper foreclosure, predatory servicing, deceptive lending practices, and violations of federal lending laws. These cases show a pattern of misconduct and support Plaintiffs position that Defendant's actions in this case were not isolated incidents, but rather part of a broader institutional problem.

8. Defendant initiated foreclosure proceedings and Plaintiff was forcibly removed from her home based on misrepresentations to the court and fraudulent documents. The foreclosure proceedings were carried out despite Plaintiffs consistent objections and| without a legitimate demonstration of Defendant's lawful interest in the mortgage note.

9. The Borrower Covenant within the mortgage contains false and misleading statements regarding the rights and obligations of the parties. Specifically, the Covenant includes language stating that the 'Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property.' This clause misrepresents the true nature of the transaction by suggesting that the

Plaintiff voluntarily and knowingly conveyed the estate under valid terms and conditions. In reality, the Plaintiff was misled into signing a contract she did not fully understand, without full disclosure or negotiation, under false assurances of fairness and legitimacy. The language in the Covenant falsely suggests lawful authority and enforceability, when the underlying mortgage contract was an unconscionable adhesion agreement. Specifically, the Plaintiff had never possessed the property prior to the execution of the mortgage contract and would not have taken possession absent signing the agreement. Therefore, the assertion in the Borrower Covenant that the Plaintiff was 'lawfully seised' of the estate and had the right to convey is a legal and factual misrepresentation. It falsely implies prior ownership and legal authority that did not exist at the time of execution. This clause contributed to the fraudulent appearance of legitimacy and was relied upon by the Defendant to unlawfully assert rights it did not possess.

10. Plaintiff was denied clear, accurate disclosures as required under the Truth in Lending Act (TILA), subjected to unlawful and deceptive servicing practices under the Real Estate Settlement Procedures Act (RESPA), and consistently misled about the identity of the the party in interest. The Defendant failed to respond to Qualified Written Requests, failed to provide accurate payoff information, and engaged in predatory servicing practices that exacerbated Plaintiffs financial hardship and undermined her ability to preserve her home.

(ECF No. 5.)

Between both "Original Complaints," Plaintiff asserts the following claims against

KeyBank: Breach of Contract, Fraud in the Factum, Breach of Fiduciary under Ohio Trust Law,

Violation of the Ohio Uniform Commercial Code, Violation of the Truth in Lending Act,

Violation of the Consumer Credit Protection Act, Violations of MERS Procedures, Securities

Fraud under the Ohio Securities Act, Violations of the Dodd-Frank Act, Violation of the Real

Estate Settlement Procedures Act, Violation of the Fair Debt Collection Practices Act, Breach of

the Covenant of Good Faith and Fair Dealing, Violation of the Ohio Civil RICO Statute.

Plaintiff also asserts what appears to be a claim for a "Pattern of Misconduct" by KeyBank,

Fraudulent Misrepresentation in Borrower Covenant, Lack of Standing and Wrongful

Foreclosure, and Restitution. In both "Original Complaints," by way of relief, Plaintiff seeks a

declaration that KeyBank lacked standing, injunctive relief, rescission of the mortgage, equitable relief, and various forms of monetary damages.

In her duplicate additional filings, Plaintiff further alleges the following. The Franklin County Recorder's Office improperly recorded Plaintiff's name and the parcel number, facilitating the wrongful foreclosure. The deed was fraudulently changed, KeyBank and unknown insurers filed false insurance claims on her foreclosed property without valid proof of loss, and she was wrongfully assessed taxes and forced to pay unearned interest without lawful justification. Further, she alleges that Defendant Judges O'Donnell and Andria Noble presided over two versions of the same case with different case numbers, violating Plaintiff's due process rights. Finally, she asserts that Defendants Johnson and Gurchik, both attorneys, knowingly participated in fraudulent court proceedings. Among other relief, Plaintiff requests that this Court declare the foreclosure proceedings void due to fraud, immediately reverse the wrongful foreclosure, invalidate fraudulent property records at the Franklin County Recorder's Office, investigate and prosecute KeyBank for insurance fraud, and award her monetary damages.

## IV.

At this stage in the proceedings, without the benefit of briefing, the Undersigned concludes that Plaintiff's claims against KeyBank may proceed. The Undersigned expresses no opinion as to the merits of those claims. For the following reasons, however, the Undersigned **RECOMMENDS** that Plaintiff's remaining claims be **DISMISSED** in their entirety.

### A. Plaintiff's Claims against Judges and Attorneys

Plaintiff names Judges O'Donnell and Noble as Defendants, alleging that having two different judges preside over her foreclosure action violated her due process rights and constituted a fraud upon the Court. Plaintiff also names as Defendants attorneys Johnson and

Gurchik, presumably counsel for KeyBank in the state court foreclosure action, alleging their participation in fraudulent court proceedings.  These claims fail for many reasons.

First and fundamentally, Plaintiff's allegations of fraudulent actions are wholly vague and conclusory and, therefore, fail to state any type of plausible claim against any of these Defendants.  Further, "while a federal court may have jurisdiction over a fraud-upon-the-court claim where the fraud may have infected a prior judgment of *this* court, it does not have jurisdiction where the fraud allegedly infected some other court's judgment" as Plaintiff alleges here.  *EQMD, Inc. v. Farm Bureau Gen. Ins. Co. of Michigan,* No. 19-13698, 2021 WL 843145, at *9 (E.D. Mich. Mar. 5, 2021) (citations omitted).

Moreover, with respect to the Defendant Judges, "[i]t is well established that judges and other court officers enjoy absolute immunity from suit on claims arising out of the performance of judicial or quasi-judicial functions."  *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir.2007).  There are only two exceptions to judicial immunity:

> First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Harvey v. Franklin Cnty., Ohio*, No. 2:22-CV-3886, 2023 WL 3688172, at *3 (S.D. Ohio May 25, 2023) (quoting *Mireles v. Waco*, 502 U.S. 9, 11–12, 112 S.Ct. 286, 288 (1991) (internal citations omitted)).  Here, the Defendant Judges would have been acting in a judicial capacity when presiding over the foreclosure action.  In the state of Ohio, common pleas courts have "subject-matter jurisdiction over actions in foreclosure." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, ¶ 20, 2014-Ohio-4275, 21 N.E.3d 1040, 1046 (Ohio 2014); *see also* Ohio Rev. Code § 2305.01.  And, as Plaintiff alleges that the foreclosed property was located in Columbus, Ohio,

8

which lies within Franklin County, as Franklin County Common Pleas Court Judges, these Defendants would properly have jurisdiction over the foreclosure proceeding.  Finally, "presiding over and rendering judgment in a foreclosure proceeding falls squarely within the realm of 'function[s] normally performed by a judge.'"  *Smith v. Manley, Deas, & Kochalski, LLC*, No. 2:21-cv-00931, 2022 WL 4621554 (S.D. Ohio Sep. 30, 2022) (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).  Accordingly, it is **RECOMMENDED** that Plaintiff's claims against the Judge and attorneys involved in the underlying foreclosure action be **DISMISSED.**

### B.  Plaintiff's Claims against the Franklin County Recorder's Office

As noted, Plaintiff alleges that the Franklin County Recorder's Office engaged in fraud by, *inter alia*, misrepresenting foreclosure records to facilitate property seizure.  A county recorder's office, however, is not a legal entity capable of being sued.  *El-Bey v. United States*, No. 1:21-CV-574, 2022 WL 394379, at *4 (S.D. Ohio Feb. 9, 2022), *report and recommendation adopted*, No. 1:21-CV-574, 2022 WL 2835003 (S.D. Ohio July 20, 2022) (finding the Clinton County Recorder's Office was not an entity capable of being sued); *Pratt v. Ohio*, No. 1:15-CV-510, 2015 WL 5447789, at *2 (S.D. Ohio Sept. 16, 2015), *report and recommendation adopted*, No. 1:15-CV-510, 2015 WL 5884895 (S.D. Ohio Oct. 7, 2015) (same finding with respect to the Hamilton County Recorder's Office).  And, even if it were an entity capable of being sued, Plaintiff's allegations are far too vague and conclusory to state any plausible claim.  Accordingly, it is **RECOMMENDED** that any claims against the Franklin County Recorder's Office be **DISMISSED.**

### C.  Remaining Defendants

Plaintiff makes no factual allegations against Defendants Frandsen, Windsor, Hendrix, or the Franklin County Treasurer; she merely mentions them by name in the caption of her duplicate filings, which the Court has construed here as an extension of her "Original Complaints." It is a basic pleading requirement that a plaintiff attribute factual allegations to particular defendants. *See Twombly,* 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). "When a person is named as a defendant without an allegation of specific conduct, even under the liberal construction afforded to *pro se* complaints, the complaint against that defendant is subject to dismissal." *Kynwulf v. Corcoran,* No. 2:24-CV-213, 2025 WL 1093387, at *4 (S.D. Ohio Apr. 11, 2025) (citing *Gilmore v. Corr. Corp. of Am.,* 92 F. App'x 188, 190 (6th Cir.2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights)). Accordingly, it is **RECOMMENDED** that any claims Plaintiff has intended to assert against these Defendants be **DISMISSED**.

## V.

For the reasons set forth above*,* it is **RECOMMENDED** that the Complaint be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) with the exception of Plaintiff's claims against KeyBank National Association.

Further, it is **ORDERED** that the United States Marshal shall serve a copy of the Complaint (ECF Nos. 4, 5), summons, and this order upon Defendant KeyBank National Association as directed by Plaintiff. All costs of service shall be advanced by the United States.

It is further **ORDERED** that Plaintiff shall serve upon this Defendant or, if appearance has been entered by counsel, upon Defendant's attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original

paper to be filed with the clerk of court a certificate stating the date a true and correct copy of any document was mailed to defendants or counsel. Any paper received by a district judge or magistrate judge which has not been filed with the clerk or which fails to include a certificate of service will be disregarded by the court.

It is further **ORDERED** that Plaintiff shall inform the Court promptly of any changes in Plaintiff's address which may occur during the pendency of this lawsuit.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

DATED: April 25, 2025

/s/ *Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**